UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| CAROLYN FOUST, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MICHAEL ASTRUE, )<br>COMM'R OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | 4:08-cv-11-AS-APR |

### MEMORANDUM OPINION & ORDER

Plaintiff, Carolyn Foust ("Ms. Foust"), seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. Acting for the Commissioner of Social Security, an Administrative Law Judge ("ALJ") denied her applications, finding that Ms. Foust was not disabled, as defined by the Act, because she remained capable of performing a significant number of jobs in the national economy despite the functional limitations resulting from her impairments. Ms. Foust appealed to this Court and a hearing was held on this matter in Lafayette, Indiana on June 15, 2009. For the reasons set forth below, this Court grants Ms. Foust's request and remands this case for further proceedings consistent with this Opinion and Order.

### I. BACKGROUND

Ms. Foust was 53 years old as of her alleged onset date and, therefore, was classified as "a person closely approaching advanced age" under the Agency's Regulations. She was 57 years old at the time of her ALJ hearing and, therefore, was classified as a "person of advanced age." <u>See</u> 20 C.F.R. § 404.1563(d), (e). Additionally, Ms. Foust is a high school graduate who underwent one year of special training for Histology and Cystology. She worked as a histologist.

Ms. Foust applied for Social Security Disability benefits on April 29, 2004, claiming disability based on breast cancer, severe hearing loss, pelvic surgery, fibromyalgia, and migraines, with an onset date of March 6, 2003.

On December 17, 2004, after her application was denied, Ms. Foust requested a hearing before the ALJ. On October 31, 2005, a hearing was held before ALJ Blanca De la Torre, during which Ms. Foust, Dr. Nina Smith, and vocational expert Stephanie Archer testified. On December 19, 2006, the ALJ determined that Ms. Foust was not under a disability, as defined by the Act. On January 3, 2007, Ms. Foust requested an appeal of the ALJ's decision, which was denied by the Appeals Council on January 3, 2008, thus, rendering the ALJ's decision the final decision of the Commissioner.

(1)  <u>Medical Evidence</u>

On March 6, 2003, Ms. Foust had a total mastectomy of her left breast to remove a cancerous growth, after which her prognosis was "good." A progress note dated April 17, 2003, indicated that Ms. Foust was "in remission with no evidence of cancer."

2

On April 24, 2003, Dr. DiMartino opined that Plaintiff did not have any physical impairment, cardiac impairment, or mental/nervous impairment.

On July 30, 2003, Ms. Foust saw Thomas Brennan, M.D., who stated that Ms. Foust's physical examination was essentially normal, but that she had severe bilateral sensorineural hearing loss. Though she wore hearing aids, Dr. Brennan did not feel that she was a candidate for medical or surgical treatment. An audiometric test confirmed Plaintiff's hearing loss, but the report indicated that Plaintiff's speech was understandable.

On March 3, 2004, Ms. Foust saw Dr. DiMartino, who stated that she "had no evidence of disease [breast cancer] at this point" (Tr. 440). On a May 18, 2004 visit, Dr. DiMartino stated that Ms. Foust had "an excellent chance of 5 year survival free of breast cancer. She has no disability related to her cancer treatment."

On June 1, 2004, Dr. Charles Turner completed a Medical Assessment of Ms. Foust at the request of her attorney. Dr. Turner reported that Plaintiff had fibromyalgia and checked boxes indicating that Ms. Foust had "debilitating fatigue that does not go away with bed rest" and that she had a "sleep disorder with morning stiffness." He also indicated that Ms. Foust had "diffuse aches and pains," and tenderness in 11 out of 18 trigger points, although he did not specifically identify which ones.

On July 13, 2004, Ms. Foust was examined by R. Newton, M.D., who noted that Ms. Foust had been diagnosed with fibromyalgia (Tr. 349). He also noted that Ms. Foust reported that she had migraine headaches three times a month, but that medication helped. After

3

examining Ms. Foust, Dr. Newton reported that she was able to get on and off the examination table without difficulty or assistance; she did not walk with an assistive device; her extremities were free of clubbing or cyanosis; she had a normal gait and station; was able to walk on her toes and heels without difficulty; was able to bend all the way over and get back up without difficulty; was able to squat; there was no tenderness to palpation of the spine; no evidence of inflammation, effusion, or swelling in any of the joints tested; straight-leg-raise testing was negative for radicular symptoms bilaterally. Dr. Newton also reported that Ms. Foust was alert and oriented; her cranial nerves were intact; motor strength testing was full at 5/5 in all muscle groups tested; hand grip was 5/5 on the right and 3/5 on the left; fine finger movements were normal; and she had the normal ability to handle small objects and button buttons on clothing. Dr. Newton diagnosed Ms. Foust with fibromyalgia and indicated that she needed further evaluation.

At an unknown date, an unknown state agency physician opined that Ms. Foust could occasionally lift and/or carry 50 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and was unlimited in her ability to push and/or pull with her extremities. The physician relied upon the examination done by Dr. Newton and opined that Plaintiff could "carry out daily activities." Notably this opinion is unsigned and undated.

On September 16, 2004, J. Pressner, Ph.D., a state agency psychologist, reviewed the evidence of record and stated that Ms. Foust did not have a severe mental impairment, but

4

only had mild limitations in the restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. On November 22, 2004, another state agency psychologist, concurred with Dr. Pressner's assessment.

On September 22, 2004 and November 19, 2004, two additional state agency physicians reviewed the evidence of record. The former, Dr. Lopez, opined that Ms. Foust did not have any exertional, postural, manipulative, or visual limitations, but that her ability to hear was limited and that she should avoid concentrated exposure to noisy environments. The latter, Dr. Ruiz, opined that Ms. Foust had no exertional or postural limitations.

In January and February 2005, Ms. Foust saw Dr. Kaluta, complaining of diffuse discomfort mainly in her lower extremities and indicated that the pain seemed to be worse on her left side and was worse with activity. Dr. Kaluta reported that Ms. Foust exhibited a good range of motion in the wrists; full range of motion of the elbows and shoulders; good range of motion of the cervical spine. On physical examination, Dr. Kaluta reported that there was diffuse tenderness over the paraspinal muscles over the neck and lumbosacral spine; her gait was within normal limits; muscle strength was full at 5/5; and there were no clear sensory deficits detected. The same day, Dr. Kaluta completed a "Medical Source Statement" at the request of Ms. Foust's attorney and opined that Ms. Foust could lift/carry less than 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk at least 2 hours in an 8 hour workday; must periodically alternate sitting and standing every 30

minutes; could not balance, kneel, crouch, or crawl; and was limited in her ability to reach, handle, finger, and feel.

On October 28, 2005, Ms. Foust had a successful arthroscopic surgery to repair the tendon in her left ankle. A progress note dated November 18, 2005, stated that Plaintiff's range of motion was "fairly good."

Finally, on November 2, 2005, Jeff Duvall, M.D., stated, "I do not believe [Plaintiff] is depressed." He stated, "[s]he has handled these stressors remarkably well and continues to do well despite her limitations."

(2) <u>Testimony</u>

At the hearing, Ms. Foust testified that she had to lift between 25 and 50 pounds at her last job as a histologist. She testified that following her surgery for breast cancer, she still had shooting pains across her chest and under her arm. She testified that she left school because of debilitating pain and took many pain pills. She also testified that she had severe migraines at least three times a week.

Also, Dr. Nina Smith, a medical expert, testified that Ms. Foust did not have an impairment that met or medically equaled an impairment listed in the social security regulations. Dr. Smith noted that Ms. Foust had adequate hearing with a hearing aid. With respect to breast cancer, Dr. Smith opined that therapy might help Ms. Foust's loss of range of motion due to her mastectomy. Dr. Smith indicated that Ms. Foust's "main restriction would be the overhead reaching of her left shoulder that might be affected" and that Ms.

6

Foust should not sit, stand or walk more than two hours continuously and should never climb ropes or scaffolds.

Dr. Smith dismissed Dr. Turner's evaluations because she felt that he used inconsistent types of medications, including alternative medicine, and Dr. Duvall's evaluations because he did things that worsened Ms. Foust's pain and gave Ms. Foust handling limitations without any evidence to support them.

Finally a vocational expert (VE) testified that Ms. Foust could perform her past relevant work, which involved lifting 50 pounds at times.

(3)  The ALJ's findings

The ALJ found that Ms. Foust was not disabled because she was "capable of making a successful adjustment to other work that exists in the national economy." (TR 27). Thus, the ALJ found that Ms. Foust's claim failed under step five of the five-step sequential evaluation outlined in 20 C.F.R. §404.1520.

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is a limited one. The Commissioner's findings of fact are conclusive so long as they are supported by "substantial evidence." 42 U.S.C. §405(g). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 399-400 (1971)). In making a substantial evidence determination, this Court will review the record

7

as a whole, but will not re-weigh the evidence or substitute its own judgment for that of the Commissioner. Overman v. Astrue, 546 F.3d 456, 462 (7th Cir. 2008).

"Although this standard is generous, it is not entirely uncritical." Id. at 462 (quoting Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002)). This Court must ensure that the ALJ has built "an accurate and logical bridge between the evidence and the result." Getch, 539 F.3d at 481-82. However, if reasonable minds could differ on whether a claimant is disabled, the court must affirm the Commissioner's decision denying benefits. Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

The regulations supporting the Social Security Act create a five-step inquiry in determining whether a claimant is disabled, under which the ALJ must consider the applicant's claim in the following sequence:

(1) whether the claimant is currently employed;
(2) whether she has a severe impairment;
(3) whether her impairment meets or equals one listed by the Secretary;
(4) whether the claimant can perform her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001) (citing 20 C.F.R. § 404.1520).

Here, the ALJ found that Ms. Foust was capable of performing work in the national economy at step five of the five-step inquiry.

Ms. Foust argues that the ALJ's opinion should be set aside because she relied upon the following: (1) the testimony of a medical expert who stated that she did not believe in fibromyalgia, and (2) a written opinion by a state agency physician which was unsigned and undated.

(1)  The Medical Expert's Testimony Regarding Fibromyalgia

Turning to Ms. Foust's argument about the medical expert's belief in fibromyalgia, the Seventh Circuit has defined fibromyalgia as, "a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features." Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996). Though prevalent in many disability cases, fibromyalgia is not among those disorders listed in the Social Security regulations; therefore a claimant is required to produce objective medical findings to support a diagnosis that meets or medically equals one of the listed impairments. 20 C.F.R. §404, subpart P; see also Aimée E. Bierman, Note, The Medico-Legal Enigma of Fibromyalgia: Social Security Disability Determinations and Subjective Complaints of Pain, 44 Wayne L. Rev 259 (1998).

Generally doctors diagnose fibromyalgia "by locating at least 11 tender spots from 18 fixed locations throughout the body." Groskreutz v. Barnhart, 108 Fed.Appx. 412, 417 (7th Cir. 2004). "[O]nce diagnosed, sufferers can also expect to experience 'pain all over,' fatigue, and disturbed sleep." Id.

In Ms. Foust's case, Dr. Turner examined her trigger points on June 1, 2004, and reported that at least eleven trigger points were tender. (Tr. 426). In the record, numerous

9

other physicians noted Ms. Foust's history of fibromyalgia, yet the June 2004 test appears to be the only trigger point test present in the record. At the hearing before the ALJ, the medical expert testified that Ms. Foust's fibromyalgia did not meet or medically equal any of the listed impairments in 20 C.F.R. 404.1520(d), 404.1525, or 404.1526. Similarly, the ALJ held that Ms. Foust's fibromyalgia did not meet or equal a listed impairment and, in so finding, the ALJ specifically relied upon the medical expert's opinion as well as a state agency psychiatric review form. (Tr. 21-22).

However, Ms. Foust argues that the opinion of the ALJ should be reversed due to a portion of the medical expert's testimony, as follows:

> Q: Do you recognize any limitations from the fibromyalgia and/or headaches?
> A: I don't - -
> Q: or restrictions?
> A: Fibromyalgia is generally considered compatible with sedentary and light work. The ability to do work is not limited by fibromyalgia . . .
> Q: And so in answer to the question, you do not recognize any limitations from either of those two diagnosis. Is that correct?
> A: No, I do not.

(Tr. 133-34).

It is well established in Social Security disability law that fibromyalgia has the capacity to be a completely disabling condition. See Estok v. Apfel, 152 F.3d 636, 638 (7th Cir.1998); Sarchet, 78 F.3d at 307. Hence, the medical expert's statement that "The ability to do work is not limited by fibromyalgia." is incorrect. Due to the limitations inherent in

10

reviewing a transcript of the proceeding, it is difficult for this Court to determine whether the medical expert believes that fibromyalgia never limits the ability to work, or, instead, whether the medical expert was merely opining that Ms. Foust, in particular, was not limited in her ability to work. Cf. Eichstadt v. Astrue, 534 F.3d 663, 668 (7th Cir. 2008) (noting that with respect to credibility determinations, "the ALJ is in the best position to see and hear the witness"); U.S. v. Caicedo 937 F.2d 1227, 1230 (7th Cir. 1991) ("this Court recognizes the limitations inherent in reviewing a written record. . .").

The facts of this case bear a striking resemblance to those of a recent case out of the Southern District of Indiana, Hamilton v. Astrue, 2008 WL 2705171, *8-9 (S.D. Ind. June 28, 2008). In Hamilton, the medical expert testified that he did not consider fibromyalgia disabling. Id. at *9. Though the Court held that the medical expert's testimony contained a "possible misstatement," it nonetheless affirmed that portion of the ALJ's opinion because the ALJ did not rely upon the medical expert's statement. Id. Instead, the Court held that the ALJ arrived at the correct legal conclusion in stating that fibromyalgia is "*not necessarily* a disabling condition." (emphasis in original). Id.

Thus, the critical question here is not whether the medical expert's assessment was correct, but whether the ALJ relied upon an incorrect medical assessment in arriving at her holding. See Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000) (upholding the ALJ's opinion even though the medical expert's testimony "raises some cause for concern" because "there is no indication in this record that the ALJ accepted or relied upon the objectionable portions
11

of the medical expert's testimony."); Hamilton, 2008 WL 2705171 at *9 (upholding the ALJ's treatment of the medical expert's opinion because (1) "[t]he ALJ's analysis did not rely upon [the medical expert's] possible misstatement; (2) "[t]he ALJ's further discussion of the disease was based upon the medical opinion of several physicians; and (3) "[i]t contained no errors of law" on the issue.").

Here, this Court is placed in the tenuous position of trying to determine the precise portions of the medical expert's testimony upon which the ALJ relied. Whether it was the result of inarticulateness or it is a true statement of the medical expert's belief, her statement about fibromyalgia was inaccurate. However, it is not her opinion, but, instead, that of the ALJ that is under review by this Court.

In this case, the ALJ listed fibromyalgia as one of many conditions which resulted in Ms. Foust having a severe impairment. (Tr. at 20). She then went on to recount some of the medical expert's findings. Though the ALJ did not expressly mention the portions of the medical expert's testimony with which Ms. Foust draws issue, it cannot be said that the ALJ made an alternative legal finding, as did the ALJ in Hamilton, who, counter to the medical expert's opinion, held that fibromyalgia is "*not necessarily* a disabling condition." Hamilton, 2008 WL 2705171 at *9. That is to say, there is neither evidence that the ALJ relied upon the objectionable portion of the medical expert's testimony, nor is there clear evidence that she declined to do so. Perhaps on its own, this issue would not warrant a remand; however, when taken together with the other issue in this case, a remand is necessary. Therefore, on

remand, the ALJ must reassess whether Ms. Foust's fibromyalgia meets or medically equals a listed impairment and, in doing so, the ALJ must specifically identify the basis underlying his or her finding.

(2)  The ALJ's Treatment of an Unsigned, Undated Medical Report

The second issue troubling to this Court is the ALJ's use of a medical opinion in the record that is neither signed, nor dated. (Tr. 311-17). The Commissioner argues that this should not detract from the ALJ's assessment for the following reasons: (1) based on references contained in the evaluation, the Court can determine that the report was written sometime after August 24, 2004, (2) the ALJ adopted more limited findings than those contained in the unsigned and undated report, and (3) the ALJ did not rely upon the report. (Docket No. 29 at 16 n. 7).

The regulations promulgated to support the Social Security Act contemplate that an ALJ will review evidence from "acceptable medical sources" in order to establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 404.1513. The regulations go on to delineate examples of "acceptable medical sources" such as licensed physicians and licensed psychologists. Id.

Several Social Security disability cases have dealt with the presence of unsigned, undated medical opinions. For instance, in Davis v. Astrue, an opinion out of the Eleventh Circuit, the claimant argued that her treating physician's opinion should have been given controlling weight since the only medical evidence contradicting her physician's opinion was

13

"an unsigned and undated opinion of an agency employee." Davis v. Astrue, 287 Fed.Appx. 748, 752-753 (11th Cir. 2008). Notably, in Davis the ALJ specifically stated that he was giving the state agency RFC form no weight since it was neither signed nor dated. Id. at 751. Thus, the Court did not reach the issue of whether an ALJ may support his or her opinion with an unsigned, undated piece of medical evidence.

In Stout v. Comm'r Soc. Sec. Admin., the Ninth Circuit Court of Appeals held that an ALJ properly gave the opinion of claimant's treating psychologist "little or no weight" because it was unsigned, undated, and was designed to promote a finding of disability based on quickly made check marks rather than specific or personalized findings. Stout v. Comm'r, Soc. Sec. Admin., 191 Fed.Appx. 554, 556 (9th Cir. 2006).

Finally, in a recent opinion from this district, the Honorable Magistrate Judge Cherry found that an ALJ's opinion was not supported by substantial evidence where the ALJ cited to an unsigned, undated report from a state agency psychologist in support of his RFC. Koslow ex rel. Koslow v. Astrue, 2008 WL 1457003, *18 (N.D. Ind. May 22, 2009). Judge Cherry held that the ALJ did not adequately address why he gave the unsigned, undated opinion more weight than that of the claimant's treating psychiatrist. Id. at *18.

Notably, both Koslow and Stout are distinguishable from Ms. Foust's case. In the former two cases, the ALJ knew which doctors had written the unsigned, undated opinions. Presumably, those opinions bore some other evidence indicating their author. Here, neither the ALJ nor the Commissioner, nor this Court is aware of what physician authored the

14

unsigned, undated medical opinion in the record. Therefore, it is impossible to determine whether said opinion was submitted by an "acceptable medical source" as defined in the Social Security regulations. See 20 C.F.R. § 404.1513.

However, the presence of the unsigned, undated opinion in the record would not be cause for concern so long as the ALJ did not rely upon it, as was the case in Davis and Stout. In this case, the ALJ was charged with reviewing several hundred pages of medical evidence, which she then summarized into a ten page opinion. She explicitly mentions the unsigned, undated opinion once, when she discounted the opinion of Dr. Duvall, stating:

> Dr. Jeff Duvall states that frequent headaches 'effect (sic) her ability to perform normal activities' (Ex. 1F pg 29). This opinion is inconsistent with an evaluation by a State Agency which reviewed the medical evidence of record with regard to the fibromyalgia, and migraine headaches and concluded that the claimant can carry out daily activities (Ex. 1F pg 22).

(Tr. at 24). The ALJ then goes onto assess the claimant's mental health. To the extent that the Commissioner argues that the ALJ had other evidence to rebut Dr. Duvall's statement concerning the effect of Ms. Foust's headaches on her ability to perform normal activities, this Court disagrees.

Furthermore, determining whether the ALJ's reliance upon the unsigned, undated medical opinion was proper, places this Court in the difficult position of assessing whether and to what extent the ALJ relied upon that opinion. The only evidence in the record that assists this Court in its determination is the written decision of the ALJ herself, which explicitly cites to the opinion in controversy. Therefore, this Court holds that the ALJ did,

to some extent, rely upon the unsigned, undated medical opinion in holding that evidence of Ms. Foust's activities of daily living are inconsistent. On remand, the ALJ must reevaluate Ms. Foust's RFC in light of her activities of daily living.

(3)     Ms. Foust's Transferable Skills

Finally, Ms. Foust presents an argument in her reply brief that, due to her age, the ALJ should have considered whether Ms. Foust had any transferable skills. However, the Court need not consider Ms. Foust's transferable skills argument, which she waived by failing to raise it in her opening brief. See Keatts v. Astrue, 2008 WL 4414688 at *9 (N.D. Ind. 2008); Leonard v. Barnhart, 2006 WL 3523103 at *14 (W.D. Wis. 2006); Rogers v. Barnhart, 446 F.Supp.2d 828, 851 (N.D. Ill. 2006).

Due to the particularities of the procedural rules in ALJ hearings, it is not for this Court to say whether or not this finding precludes Ms. Foust from raising the argument on remand. See, e.g., Door Sys., Inc. v. Pro-Line Door Sys., Inc., 83 F.3d 169, 174 (7th Cir. 1996) ("An appellee is not required to advance every possible ground for affirmance; and should the case be remanded it can advance the additional grounds in the district court, provided they have not been waived in that court.").

IV. CONCLUSION

The purpose of this Court's limited review of the ALJ's decision is to ensure that it is supported by substantial evidence. Due to the aforementioned evidentiary errors in this case, the Court **GRANTS** the relief requested in Ms. Foust's Social Security Opening Brief.

(Docket No. 26). The decision of the ALJ is **REVERSED** and **REMANDED** for further proceedings consistent with this Order. It is strongly recommended that this case be reassigned to a new and different ALJ.

**SO ORDERED**.

**DATED: June 26, 2009**

                                                /s/ ALLEN SHARP
                                      **ALLEN SHARP, JUDGE**
                                      **UNITED STATES DISTRICT COURT**